**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

DONALD CARSON, et al.,

                Plaintiffs,

v.                               CIVIL ACTION NO.   5:14-cv-11617

INTERNATIONAL HEADQUARTERS
PENSION AND BENEFICIARIES PLAN
OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiffs' *First Amended Complaint* (Document 23), the Defendants' *Motion to Dismiss* (Document 24), *Memorandum of Points and Authorities in Support* (Document 25), and *Appendix Materials in Support* (Document 26), the *Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss First Amended Complaint* (Document 28), and the *Reply in Support of Defendants' Motion to Dismiss* (Document 29). For the reasons stated herein, the Court finds that the Defendants' motion to dismiss must be granted.

## I.      *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The Plaintiffs initiated this action with a *Complaint* (Document 1) filed on March 5, 2014, alleging that the Defendants violated provisions of the Employee Retirement Income Security Act

1

(ERISA) by not permitting them to participate in an ERISA-governed defined benefit pension plan.  The Defendants moved to dismiss for failure to exhaust administrative remedies, and the Plaintiffs filed their *First Amended Complaint*.  Thereafter, the Defendants filed a *Motion to Dismiss* the amended complaint, again citing failure to exhaust administrative remedies.

The Plaintiffs were all previously employed by the International Union of Operating Engineers (IUOE) National Training Fund's National HAZMAT Program Facility (NTF Facility) near Beckley, West Virginia.  All have since resigned or been terminated.  The Plaintiffs allege that they were "permanent employees of the IUOE paid directly by the IUOE."  (Am. Compl., ¶ 2.)  As such, they allege that they "were entitled to participate in the [General Pension Plan II]" but were denied that right by the Defendants.  (*Id.*)  They assert that the Plan Trustees issued an order in 2006 (2006 NTF Pension Order) that recognized that NTF employees "were entitled to participate and to receive pension benefits" going forward, but did not apply that policy retroactively for former employees.  (*Id.* at ¶ 44.)[1]

The Defendants are the Plan and certain current and former Plan Administrators and Trustees.  They have attached excerpts of the Plan of Benefits and Summary Plan Description to their motion to dismiss.[2]  Article 5 of the Plan of Benefits sets forth the procedures for making an application for a pension, consideration of such applications by the Trustees, and appealing any

---

1 Neither party has produced the 2006 NTF Pension Order, so the Court has no knowledge of its precise contents. All discussion of that Order is based on the Plaintiffs' allegations.

2 In reviewing the motion to dismiss, the Court has considered the Plan documents, attached in part as Exhibits A and B to the Defendants' motion to dismiss and explicitly referenced in the Plaintiffs' first amended complaint, finding them to be integral to the complaint, explicitly relied on, and authentic.  *See Blankenship v. Manchin*, 471 F.3d 523, 526, note 1 (4th Cir. 2006) (noting that the court would consider an article attached to the defendant's motion to dismiss because it was integral to, and relied upon in, the complaint and its authenticity was not questioned); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and its authenticity has not been challenged.)

denial of benefits.   (Art. 5, Plan of Benefits, att'd as Ex. A to Hanley Dec., Document 26-1.)   The attached portion of the Summary Plan Description provides additional detail about pension benefit application, determination, and appeals.   (Summ. Plan Description, att'd as Ex. B to Hanley Dec., Document 26-1.)   In sum, participants are required to submit a written application with all information or materials relevant to (a) whether they are entitled to benefits, and (b) the amount of the benefit.   The Trustees may request additional information if needed, but must make a decision within ninety (90) days, or within one hundred eighty (160) days if special circumstances necessitate additional time.

If a claim is denied, in whole or in part, the Trustees must provide the applicant with notice of the reasons for the denial.   Applicants may then appeal the denial in writing within one hundred eighty (180) days of receipt of the notice of denial.   All documents, records, and other material relevant to the claim are to be made available to applicants upon request.   The Trustees must provide written notice of their decision on any appeal within sixty (60) days, extendable to one hundred twenty (120) days if special circumstances necessitate additional time.   This notice must include notice of the applicant's right to file a civil action pursuant to ERISA.   Following completion of this process, applicants may renew their appeals if they have additional information or arguments, but are not required to do so prior to filing an ERISA claim in federal court.

Plaintiff Donald Carson, the former Director of the NTF, asserts that, shortly after his resignation in 2006, he spoke to Defendant Vince Giblin, who was then the IUOE General President and a Plan Trustee.   (*Id.* at ¶ 12.)   He alleges that he wrote a resignation letter indicating "his desire to be allowed to participate in the Plan."   (*Id.* at ¶¶ 47 & 48.)   He received no written response, nor was he provided with the Plan documents.   He alleges that he had

telephone conversations with the Defendants' legal counsel and with Mr. Giblin, both of whom informed him that Mr. Giblin had rejected his request to participate in the Plan.  (*Id.*)  He also learned that the Trustees had begun permitting existing NTF employees to participate in the Plan, though no former employees were permitted to participate.  (*Id.* at ¶ 49.)  The Plaintiffs allege that these conversations, together with the 2006 NTF Pension Order and the Defendants' failure to provide Plan documents, demonstrate that exhaustion would have been futile and/or that administrative procedures were not available to them.

## II.    STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).    Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.  8(a)(2).    Additionally,  allegations  "must  be  simple,  concise,  and  direct." Fed.R.Civ.P. 8(d)(1).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual  allegations,'  but  it  demands  more  than  an  unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."  *Iqbal,* 556 U.S. at

678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

### III.    DISCUSSION

The Defendants move to dismiss on the grounds that the Plaintiffs failed to exhaust administrative remedies through the Plan prior to filing suit.   The Plaintiffs claimed in their amended complaint that administrative exhaustion was not required because it would be futile and because they were not supplied with Plan documents.   Thus, the parties are in agreement that the Plaintiffs did not exhaust administrative remedies.   The sole question for the Court is whether an exception applies.

The Defendants cite case law establishing a high standard for demonstrating futility. They highlight the practical implications of the exhaustion requirement, namely the creation of a record for the Court to review for abuse of discretion and reasonableness should the claims be denied by the Trustees.   They further assert that "it is not even certain at this point that [the Plaintiffs'] request for benefits would be denied."   (Mem. in Supp. of Mot. to Dismiss, at 9.) They characterize the allegations regarding futility and the Plaintiffs' attempts to seek benefits as establishing "only that one Plaintiff (out of eleven) spoke on the telephone on one occasion to a single former Trustee of the Plan and on one occasion to an attorney eight years ago and he was told that he could not participate in the General Pension Plan II."   (*Id.* at 12.)   They further note that "[t]he Plaintiffs do not allege that any of the Plan's current seven Trustees, Plan Counsel or Special Counsel have decided that the Plaintiffs are not entitled to benefits from [the Plan.]" (*Id.*)[3]

In response to the Plaintiffs' allegation that they were denied access to the internal review and appeal procedures because they were not given Plan documents, the Defendants note that Plan

---

3 The Defendants also emphasize that "the Plan's Special Counsel specifically notified Plaintiffs' counsel that [the Plan] is prepared to review the Plaintiffs' benefit claims" and attach a letter to that effect sent to the Plaintiffs' counsel. (Mem. in Supp. of Mot. to Dismiss, at 12, note 2); (R. Richard Hopp Letter, May 22, 2014, Document 26-3.)

documents are quoted in the complaint and first amended complaint.   Thus, they argue that the Plaintiffs or their counsel had access to the documents prior to filing this suit and could have engaged in the administrative process.   Further, the Defendants state that federal law requires a claim review and appeal procedure, and so the Plaintiffs should have been aware that such a procedure existed.

The Plaintiffs respond that the Defendants have a "uniform policy of excluding Plaintiffs from the Plan" that they affirm "to this day," rendering any attempt to seek administrative relief futile.   (Pl.s' Mem. in Opp., at 2.)   They argue that the 2006 NTF Pension Order "explicitly ratified [the Trustees'] prior policy of excluding permanent employees at NTF, including Plaintiffs, from Plan participation" because it "did not make any reference to former employees." (*Id.* at 4.)[4]   Further, they assert that the Defendants failed to supply them with Plan documents at any point, even after Plaintiff Carson resigned and expressed a desire to receive pension benefits. They argue that many of the cases cited by the Defendants involved denial of benefits to participants included in ERISA plans, as opposed to plaintiffs allegedly wrongfully excluded from participation in a plan.   The Plaintiffs assert that the Defendants "formulated and implemented a policy that willfully excluded Plaintiffs from the Plan without notice, and…took affirmative action after Plaintiffs were no longer employed at the NTF reflecting that any claims by Plaintiffs would be rejected."   (*Id.* at 9.)   They argue that when a defendant plan has "already made its position unequivocally known," the administrative claim and appeals process is futile.   (*Id.* at 10.) Finally, the Plaintiffs cite several cases in which courts found denial of access after plaintiffs

---

4  The Court notes that failing to mention former permanent NTF employees in the order does not constitute an explicit ratification of a policy to exclude them.

requested plan documents, but were refused, to support their contention that exhaustion is excused here because they were denied access to the administrative process.

In reply, the Defendants reiterate that the Plaintiffs failed to allege facts showing even a formal policy of exclusion, much less any decision by the Trustees to exclude these Plaintiffs from the Plan.   Finally, they assert that the Plaintiffs have not set forth facts to support the inference that they were denied access to the administrative process.   The Defendants distinguish the cases cited by the Plaintiffs by noting that no facts alleged here indicate that the Plan "has refused to permit the Plaintiffs to participate in its claim review and appeal procedure, or that the Plaintiffs asked for information from the Plan which was refused to them…."   (Reply at 12.)   There is little dispute between the parties as to either the facts alleged[5] or the relevant legal standards.   Their dispute instead centers on the application of those standards to this case.[6]

ERISA requires all employee benefit plans to provide written notice of denial of any claim for benefits, and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."   29 U.S.C. § 1133.   Courts have found that these provisions support the conclusion that ERISA claimants are "required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits," despite the absence of an explicit exhaustion provision.   *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82–83 (4th Cir. 1989).   "By preventing premature interference with an employee

---

5 The Court recognizes that the Defendants would likely dispute the accuracy of many of the allegations if this case proceeded past the motion to dismiss stage.

6 The Court expresses its appreciation for the clear and well organized arguments, supported by excellent case research, presented by both parties in this case.   Well researched and well written briefs permit the Court to efficiently resolve the questions presented without unnecessary detours to decipher unclear arguments or correct misstatements of case law.

benefit plan's remedial provisions, the exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id.* at 83.

Courts have, however, created certain exceptions to the general exhaustion requirement, including denial of meaningful access to the administrative process and futility. *See, e.g.*, *SunTrust Bank v. Aetna Life Ins. Co.*, 251 F. Supp. 2d 1282, 1289 (E.D. Va. 2003) (addressing arguments as to both exceptions). To demonstrate futility, a claimant must make "a clear and positive showing that any attempt to pursue the administrative remedy in question would have been futile." *Frye v. Metro. Life Ins. Co.*, 2010 WL 5343287, at *12 (S.D.W. Va. Dec. 20, 2010) (Chambers, J.) (internal quotation marks omitted). Further, courts apply the futility exception "only when resort to administrative remedies is clearly useless." *Id.* (internal quotation marks omitted).

Not as much Fourth Circuit case law is available with respect to denial of access to administrative procedures. The Northern District of West Virginia noted that other circuit courts "have refused to waive the exhaustion requirement in ERISA cases where the claimant was not adequately informed of claims procedures." *Kern v. Verizon Commc'ns, Inc.*, 381 F. Supp. 2d 532, 537 (N.D.W. Va. 2005) (citing *Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 133 n. 2 (2d Cir.2001); *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.,* 215 F.3d 475 (5th Cir.2000)). However, courts have recognized that the exhaustion requirement may be waived when "the plaintiff was denied meaningful access to internal review procedures," or when the plaintiff was not informed of the appeals process. *Trotter v. Kennedy Krieger Inst., Inc.*, 2012 WL 3638778, at *5(D. Md. Aug. 22, 2012); *Hailey v. Commonwealth Aluminum Corp.*, 903 F.

Supp. 910, 912 (D. Md. 1995).   In *Trotter*, the plaintiff alleged that she submitted a claim form, but that the insurance company (and fiduciary) refused to process it.   *Trotter*, 2012 WL 3638778, at *5.   Thus, the court found, she had been denied access to the administrative process, and could not be expected to file an appeal of a claim that had not been considered.   *Id.*   In *Hailey*, on the other hand, the plaintiff "never made a claim in the first place," only informal telephonic inquiries to which she received equally informal responses.   *Hailey*, 903 F. Supp. at 912.   Accordingly, the court found that she could not complain of lack of access to the appeals process.   *Id.*

As in *Hailey*, the Plaintiffs here did not attempt to utilize the administrative process and cannot now claim that that process would have been futile or that they were denied access to it. They allege that they have not been treated as participants[7] or provided Plan documents and that one Plaintiff had informal conversations in which he was told he would not be permitted to participate.   They do not allege that they asked for copies of the Plan documents and were refused. They do not allege that they attempted to file applications for benefits.   They do not allege that they asked the Plan Administrator or Trustees how to apply for benefits.   They make no allegations to suggest that a majority of the Trustees were even aware of their claims.

To find that the administrative process would be futile, the Court would have to be certain of the outcome if the claim were properly presented to the Trustees.   The Court cannot be certain of the outcome when only one former Trustee stated that a claim would be denied.   Even that former Trustee did not have the benefit of a detailed application, supporting information, and further argument on an administrative appeal.   Likewise, even if there were an explicit policy in

---

7 The Court recognizes the Plaintiffs' difficulty in proceeding without having been supplied with Plan documents or treated as participants during their employment.   However, a plaintiff capable of filing a complaint in federal court based on the Plan language should be capable of requesting the Plan documents and submitting an application for benefits.

place to deny benefits to former NTF employees like the Plaintiffs, arguments against such a policy must be made first to the Trustees through the administrative process.   The statutory requirement that plans have an internal process for appealing claim denials would be rendered meaningless if the Court were to assume that minds could not change after an initial denial or that potentially illegal policies could not be reconsidered and changed when challenged.   The internal claim and appeal process is designed to provide the Trustees with all of the information and arguments to make an informed decision.   The Plaintiffs, however, have presented claims and argument to this Court for the first time, without ever attempting to access or exhaust the administrative process.   Not only would it be improper for the Court to consider claims presented in this posture, it would be impossible to do so under the appropriate standard, because the Court lacks an administrative record.[8]   Accordingly, the Defendants' motion to dismiss must be granted**.**

### *CONCLUSION*

For the reasons stated herein, following careful consideration, the Court hereby **ORDERS** that the Defendants' *Motion to Dismiss* (Document 24) be **GRANTED** and that this matter be **DISMISSED WITHOUT PREJUDICE**.

The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT** and that this matter be removed from the Court's docket.

---

8 When exhaustion truly is futile or unavailable because of denial of access, courts have something to replace the administrative record: the previous communications and attempts at resolution, with responses (or a refusal to respond) by the decision makers.   Here, the Plaintiffs made no meaningful attempt to engage in the administrative process, and so the Court has no information about the potential responses or reasoning of the Trustees.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:        September 9, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA